UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

-v-                      C.A. No.: 2:06-CR-20122-AC-VMM

                              Hon. Avern Cohn

                              Hon. Virginia M. Morgan, U.S.M.J.

**PETER DOMINIC TOCCO, etc., et al.,**

        **Defendants.**

_____/

**MOTION TO SEVER AND FOR SEPARATE TRIAL OF DEFENDANT
JACK V. GIACOLONE**

NOW COMES THE DEFENDANT, JACK V. GIACALONE, by and through his attorneys, Richard L. Steinberg, P.C., and Rockind and Liss, P.L.L.C., and pursuant to Rule 14, F. R. Civ. Pr., and respectfully moves this Honorable Court for an order severing the Defendant, Jack V. Giacolone, from the remaining Defendants, and ordering an individual and separate trial for said Defendant, on the following grounds:

1. A close reading of the true bill of indictment returned in this case discloses that the Defendant, Jack V. Giacolone, is at best, a peripheral figure in this case: (a) in the multi-count indictment, the said Defendant is charged with only three (3) offenses; and is alleged to have committed only two (2) relatively minor overt acts in furtherance of the alleged indictment.

2. More importantly, because he shares the same last name with other members of his family who have been popularized in the news media and "pop culture" or pseudo-historical books, identifying them as leading members of organized crime, tying him to like persons in the indictment presents the very real threat that he may be convicted on the basis of "guilt by association," rather than guilt based upon the commission of a Federal offense or offenses.

3. A joint trial will be highly prejudicial for the Defendant, Jack V. Giacolone, and will deprive him of his Fifth and Sixth Amendment rights to a fair trial before a fair and impartial tribunal.

WHEREFORE, the Defendant, Jack V. Giacolone, respectfully prays that this Honorable Court shall grant the relief sought herein, *in toto,* and grant such other and further relief as this Court shall deem just, equitable, and proper in the premises.

**RESPECTFULLY SUBMITTED,**

**RICHARD L. STEINBERG, P.C.**

By: s/Richard L. Steinberg
   Richard L. Steinberg
   1800 Buhl Building
   535 Griswold street
   Detroit, Michigan 48226
   TX: 313.964.5500
   FAX: 313.964.5555
   E-MAIL: Trial.law@worldnet.att.net

**ROCKIND & LISS, P.L.L.C.**

By: s/Neil Rockind
   Neil S. Rockind
   255 Gem Building
   30300 Northwestern Highway
   Farmington Hills, Michigan 48334
   TX: 248.865.9400
   FAX: 248.865.9033
   E-MAIL:

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**-v-**          C.A. No.: 2:06-CR-20122-AC-VMM

            Hon. Avern Cohn

            Hon. Virginia M. Morgan, U.S.M.J.

**PETER DOMINIC TOCCO, etc., et al.,**

    **Defendants.**

_____/

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SEVER AND FOR SEPARATE TRIAL OF DEFENDANT JACK V. GIACOLONE**

## TABLE OF CONTENTS

**TABLE OF AUTORITIES………………………………………………………………i**

**STATEMENT OF QUESTION PRESENTED………………………………………...v**

**CONTROLLING OR MOST APPROPRIATE AUTHORITIES…………………...vi**

**LEGAL ARGUMENT……………………………………………………………………...1**

   I.   **THE CONSOLIDATION OF THE NAMED DEFENDANTS IN A SINGLE INDICTMENT THREATENS TO DEPRIVE THE DEFENDANT GIACOLONE OF A FAIR TRIAL……………………………………………………..1**

  II.   **THE PROBABILITY THAT THE DEFENDANT WILL NOT RECEIVE A FAIR TRIAL IS ESTABLISHED BY THE EXISTENCE OF SEVERAL DIFFERENT SPECIES OF PREJUDICE…………………………………………………………………3**

      A.  **THE DISAPPEARANCE AND PRESUMED MURDER OF JAMES R. HOFFA AND "GUILT BY ASSOCIATION"……………3**

      B.  **THE DANGER OF "SPILL OVER EVIDENCE"…………………………...6**

 III.  **THE BETTER EXERCISE OF DISCRETION SUCH AS THE CASE AT BAR IS TO GRANT SEPARATE TRIALS…………………7**

**CONCLUSION AND RELIEF REQUESTED………………………………………...8**

**TABLE OF AUTHORITIES**

*Cases*:

*Daly v. United States*,
119 U.S. App. D.C. 353; 342 F. 2nd 932, 934 (1964),
*cert. denied,* 382 U.S. 853; 86 S. Ct. 102; 15 L. Ed. 2nd 91 (1965)...........................7

*Kotteakos v. United States*,
328 U.S, 750, 773; 66 S. Ct. 1239; 90 L. Ed. 1557 (1946).......................................7

*Martin v. Merola*,
532 F. 2nd 191 (2nd Cir. 1976)..............................................................................6

*Opper v. United States*,
348 U.S. 84, 95; 75 S. Ct. 158; 99 L. Ed. 101 (1954)..............................................1

*Schaeffer v. United States,* 3
362 U.S. 511, 516; 80 S. Ct. 945; 4 L. Ed. 2nd 921 (1960).......................................2

*United States v. Aloi*,
511 F. 2nd 585, 600 (2nd Cir. 1975), *cert. denied,*
423 U.S. 1015; 96 S. Ct. 447; 46 L. Ed. 2nd 386 (1975)..........................................6

*United States v. Balistrieri*,
346 F. Supp. 336, 338-339 (E.D. Wisc. 1972)..........................................................7

*United States v. Bascia*,
573 F. 2nd 827, 833 (3rd Cir. 1978), *cert. denied, sub nominee,*................................2

*DeSantis v. United States*,
436 U.S. 911; 98 S. Ct. 2248; 56 L. Ed. 2nd 411 (1978)...........................................2

*United States v. Berkowitz*,
662 F. 2nd 1127 (5th Cir. 1981)................................................................................2

*United States v. Casamento*,
887 F.2nd 1141, 1152 (2nd Cir. 1989)......................................................................8

*United States v. DeCesaro*,
54 F.R.D. 596, 598-599 (E.D. Wisc. 1972)...............................................................7

*United States v. Foutz*,
540 F.2nd 733 (4th Cir. 1976)..................................................................................7

*United States v. Gougis,*
374 F.2nd 758, 762 (7th Cir. 1967)……………………………………………………2

*United States v. Hatcher,*
680 F.2nd 438, 440 (6th Cir. 1986)……………………………………………………1

*United States v. Krulewitch,*
336 U.S. 440, 454; 69 S. Ct. 716; 93 L. Ed. 790 (1949)…………………………………..5

*United States v. Tocco,*
200 F.3rd 401, 410, n. 1 (6th Cir. 2000), *rehearing and rehearing en banc denied,*
209 F.3rd 935 (6th Cir. 2000)………………………………………………………….5

*United States v. Vida,*
370 F. 2nd 759, 765 (6th Cir. 1966), *cert. denied,*
387 U.S. 910; 87 S. Ct. 1695; 18 L. Ed 2nd 630 (1967)…………………………………..2

***Court Rules*:**

Rule 14, F.R. Cr. Pr…………………………………………………………………1, 2

***Treatises, Law Reviews, and Other Authorities*:**

Dawson,
*Joint Trials of Defendants in Individual Cases:*
*An Analysis of Efficiencies and Prejudices*,
77 Mich. L. Rev. 1379, 1381 (1979)……………………………………………………2

1 Charles Alan Wright,
*Federal Practice And Procedure* (2nd ed. 1982), §223, p. 786……………………………2

***Nonlegal Literature*:**

Joseph Franco with Richard Hammer,
*Hoffa's Man: The Rise and Fall of Jimmy Hoffa*
*As Witnessed By His Strongest Arm* (1987),
pp. 148, 255 (Vito Giacalone);
pp. 255 (Anthony Giacalone)……………………………………………………………4

Allen Friedman & Ted Schwartz,
*Power and Greed: Inside the Teamsters Empire of Corruption* (1989),
pp. 132, 151-153 (Vito Giacalone);
pp. 153, 191, 192, 195, 222- 225 (Anthony Giacalone)…………………………………4

James P. Jacobs,
*Mobsters, Unions, and Feds* (2006),
pp. 17, 124, 282, n. 33 (Anthony Giacalone)……………………………………………4

Dan Moldea,
*The Hoffa Wars* (1978), p. 339……………………………………………………..5

Frank Ragano & Selwyn Raab,
*Mob Lawyer* (1994),
pp. 120, 275, 278, 351-352 (Anthony Giacalone)…………………………………………..4

Thaddeus Russell,
*Out of the Jungle*: *Jimmy Hoffa and the*
*Remaking of the American Working Class* (2001).
p. 226 (Anthony Giacalone)……………………………………………………………5

Arthur A. Sloan,
*Hoffa* (1991),
pp. 371-373; 375-379; 382, 384, 392; 396-398 (Anthony Giacalone);
pp. 371-372; 398 (Vito Giacalone)……………………………………………………5

Lester Velie,
*Desperate Bargain*: *Why Jimmy Hoffa Had to Die* (1977), p. 10, n. 3…………………..3

## STATEMENT OF QUESTION PRESENTED

IS IT NOT THE BETTER EXERCISE OF DISCRETION TO SEVER THE DEFENDANT, JACK V. GIACOLONE, FROM THE OTHER DEFENDANTS NAMED IN AN INDICTMENT CHARGING MULTIPLE PERSONS IN MULTIPLE COUNTS WITH THE ILLEGAL OPERATION OF A HANDBOOK, WHEN:

- There is no allegation that this Defendant played a managerial or supervisory role in the operation of the allegedly illegal enterprise;
- There is no allegation that the Defendant was even a major player in the operation of the allegedly illegal enterprise;
- There are only two (2) overt acts attributable to the Defendant in the pursuit of the alleged conspiracy;
- Because of his surname, he is associated in the public mind and in the media with disappearance and presumed murder of Jimmy Hoffa, the most notorious and dramatized unsolved mystery in the history of Detroit, if not the entire United States;
- Because of the identity of some of his co-defendants, the Defendant faces the very real potential that the Government will successfully transmogrify this case from a relatively innocuous gambling case into an "organized crime" conspiracy;
- There is a substantial probability that the jury will be unable to set aside this combination of prejudicial factors, segregate the evidence, render an individualized judgment as to the guilt or innocence of the accused, permit the decision-making process to be tainted or aroused by ethnic prejudice or other irrational hostility, and infer guilt or a criminal predisposition from the spill over effects from evidence introduced against the co-defendants, which will in turn strengthen in the jury's mind an unfounded and unproved suspicion of guilt; and, thereby,
- Subject the Defendant to jeopardy as the product of guilt by association and guilt as the product of inflammatory evidence rather than guilt by proof of each element of the alleged crime or crimes, by proof beyond a reasonable doubt with the result that the Defendant will be required to bear the burden of proof and the burden of persuasion that he is innocent and go free, all in violation of the Defendant's Fifth and Sixth Amendment rights?

**DEFENDANT GIACALONE WOULD ANSWER: "Yes."**

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Rule 14, F.R. Cr. Pr……………………………………………………………….1, 2

Dawson,
*Joint Trials of Defendants in Individual Cases:*
*An Analysis of Efficiencies and Prejudices*,
77 Mich. L. Rev. 1379, 1381 (1979)……………………………………………….2

1 Charles Alan Wright,
*Federal Practice And Procedure* (2nd ed. 1982), §223, p. 786……………………………2

*United States v. Balistrieri,*
346 F. Supp. 336, 338-339 (E.D. Wisc. 1972)…………………………………………7

*United States v. DeCesaro,*
54 F.R.D. 596, 598-599 (E.D. Wisc. 1972)………………………………………….7

**LEGAL ARGUMENT**

I. **THE CONSOLIDATION OF THE NAMED DEFENDANTS IN A SINGLE INDICTMENT THREATENS TO DEPRIVE THE DEFENDANT GIACOLONE OF A FAIR TRIAL**

This Motion is brought under the aegis of Rule 14, F.R. Cr. Pr., which provides, in its entirety, as follows:

> **Rule 14.** **RELIEF FROM PREJUDICIAL JOINDER**
>
> If it appears or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, *grant a severance of defendants* or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce at trial.

The decision whether, or not, to grant relief under the auspices of Rule 14, F.R. Cr. Pr., is confided to the exercise of a sound and informed judicial discretion. *Opper v. United States,* 348 U.S. 84, 95; 75 S. Ct. 158; 99 L. Ed. 101 (1954); *United States v. Hatcher,* 680 F.2nd 438, 440 (6th Cir. 1986).

The outcome of the motion hinges upon a balancing test in which the rights of the criminally accused are weighed against the economies of scale and the overall efficiency of the criminal justice system. But, as a wise District Court Judge once wrote in *United States v. Thevis,* 474 F. Supp. 117, 133 (N. D. Ga. 1979):

> The balancing test used on Rule 14 Motions "is acceptable only so long as it is limited to allegations of prejudice. Once the *allegata* is transformed at trial into *probata*, there can be no balancing test. To do otherwise is to accept the principle that a modicum of prejudice is acceptable as long as governmental economy and convenience can be advanced.

***

1

> Thus, in reviewing motions for discretionary severance under Rule 14 after the initiation of testimony, the Court cannot balance the prejudice arising from a joint trial against judicial and governmental convenience, but rather it must analyze the weight and volume of the evidence to discern if a reasonable jury with appropriate instructions from the Court can distinguish the defendants, the offenses, and the evidence directed at each.

Moreover, Rule 14, F.R. Cr. Pr. imposes "a continuing duty" [*United States v. Gougis,* 374 F.2nd 758, 762 (7th Cir. 1967)], upon the District Court throughout all stages of the trial to prevent prejudicial joinder. *Schaeffer v. United States,* 362 U.S. 511, 516; 80 S. Ct. 945; 4 L. Ed. 2nd 921 (1960); *United States v. Vida,* 370 F. 2nd 759, 765 (6th Cir. 1966), *cert. denied,* 387 U.S. 910; 87 S. Ct. 1695; 18 L. Ed 2nd 630 (1967); *United States v. Berkowitz,* 662 F. 2nd 1127 (5th Cir. 1981).

However, as one leading treatise emphasizes: "Joinder of offenses may or may not be prejudicial. Joinder of defendants is very frequently prejudicial." 1 Charles Alan Wright, *Federal Practice And Procedure* (2nd ed. 1982), §223, p. 786. It has been said, that "courts have greatly exaggerated the supposed efficiencies of joint trials while grossly underestimating the impediments joint trials pose to fair and accurate determinations of individual guilt or innocence. The propriety of joint trials is more than a question of efficiencies." Dawson, *Joint Trials of Defendants in Individual Cases: An Analysis of Efficiencies and Prejudices*, 77 Mich. L. Rev. 1379, 1381 (1979).

In *United States v. Bascia,* 573 F. 2nd 827, 833 (3rd Cir. 1978), *cert. denied, sub nominee, DeSantis v. United States,* 436 U.S. 911; 98 S. Ct. 2248; 56 L. Ed. 2nd 411 (1978), a perspicacious Third Circuit panel held:

> No defendant should ever be deprived of a fair trial because it is easier or more economical to try several defendants in one trial rather than in protracted multiple trials; the goal of judicial process

>is not to decide cases as quickly and as inexpensively as possible….

In the case at bar, we have *probata* at the pretrial stage of the proceedings, rather than at the trial stage, and several different species of prejudice which threaten to deprive the Defendant of a fair and impartial trial.

## II. THE PROBABILITY THAT THE DEFENDANT WILL NOT RECEIVE A FAIR TRIAL IS ESTABLISHED BY THE EXISTENCE OF SEVERAL DIFFERENT SPECIES OF PREJUDICE

### A. THE DISAPPEARANCE AND PRESUMED MURDER OF JAMES R. HOFFA AND "GUILT BY ASSOCIATION"

On July 30, 1975, James R. Hoffa, America's most prominent labor leader at the time, and the former General President of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America [hereinafter referred to as "the IBT"] disappeared. He has never been seen or heard from again, and is presumed to have been murdered. Pursuant to the relevant probate statutes in Michigan, Hoffa has been declared legally dead. Throughout much of his career as a trade unionist, Hoffa had been dogged by sensationalist publicity and allegations of "ties to the underworld."

For example, one author has alleged that the Defendant's Father, Vito Giacalone, and his Uncle, Anthony Giacalone, had planned to assasinate Hoffa, as early as 1963, attributing his source as FBI wiretaps. Lester Velie, *Desperate Bargain*: *Why Jimmy Hoffa Had to Die* (1977), p. 10, n. 3. Typical of this genre of pulp literature, Velie refers to the Defendant's uncle, Anthony Giacalone, as "the Detroit's Mafia enforcer." Much of what has been written is rank speculation decorated with a thin veneer of Government imprimatur, such as the following, *Id.,* pp.24-25:

3

> Along with its knowledge of prior underworld plotting against Hoffa, the FBI had a local police report that raised further questions about Giacalone's possible involvement in the Hoffa disappearance. Several months before that disappearance, Giacalone had flown up from his Hallandale, Florida, retreat and put up at the Grosse Pointe home of his younger brother, Vito. Local police intelligence officers, alerted to Giacalone's arrival at the airport, had put him under twenty- four hour surveillance and had come up with some mysterious doings— which assumed significance after Hoffa's disappearance. In the late afternoon of February 19, 1975, Giacalone and his brother were observed meeting clandestinely with two Mafia labor racketeers, "Jimmy Q" Quasarano and Pete Vitale. Since Tony Jack was known to shy away from face-to-face meetings with fellow gangsters, the police believed that the meeting had more than ordinary significance. This belief was strengthened that evening when another meeting took place at Vito Giacalone's home. Parked outside was a 1973 Lincoln limousine whose license plate identified it as registered in the name of Joseph Zerilli, the don of Detroit's Mafia. "The old man [Zerilli] is careful man," a police source told the Detroit *News.* "It's not his style to meet Tony Jack like that. Something heavy must have gone down.

Every single story describing the case (officially referred to as "the FBI Hoffex File"), whether attributable to Government sources, or other allegedly knowledgeable people, has implicated the Defendant's uncle, Anthony Giacolone, or Father, Vito Giacalone, or both, as key figures in the unraveling of the Hoffa mystery; or, somehow entangled in the administration of the IBT. Some of these sensationalized accounts include: Allen Friedman & Ted Schwartz, *Power and Greed: Inside the Teamsters Empire of Corruption* (1989), pp. 132, 151-153 (Vito Giacalone); pp. 153, 191, 192, 195, 222- 225 (Anthony Giacalone); Frank Ragano & Selwyn Raab, *Mob Lawyer* (1994), pp. 120, 275, 278, 351-352 (Anthony Giacalone); Joseph Franco with Richard Hammer, *Hoffa's Man: The Rise and Fall of Jimmy Hoffa As Witnessed By His Strongest Arm* (1987), pp. 148, 255 (Vito Giacalone); pp. 255 (Anthony Giacalone); James P. Jacobs, *Mobsters, Unions, and Feds* (2006), pp. 17, 124, 282, n. 33 (Anthony Giacalone); Arthur

4

A. Sloan, *Hoffa* (1991), pp. 371-373; 375-379; 382, 384, 392; 396-398 (Anthony Giacalone); pp. 371-372; 398 (Vito Giacalone); Thaddeus Russell, *Out of the Jungle*: *Jimmy Hoffa and the Remaking of the American Working Class* (2001). p. 226 (Anthony Giacalone). And, these publications represent only a smattering of what is available in the public domain.[1]

With the last name of "Giacalone," it would be difficult enough to find a jury, untainted by the inundation of publicity, which has surrounded the Hoffa story—rivaled, perhaps, only by the disappearance of Judge Joseph F. Crater, on August 6, 1930, and who has been dubbed "The Missingest Man in New York." Worse still, the passage of time has neither dulled the public interest in Jimmy Hoffa's case nor the media's appetite for revisiting it, time and time again.

However, this state of affairs is compounded by some of these publications, which link "the Giacalone crime family" with 'the Tocco crime family;" *see,* Dan Moldea, *The Hoffa Wars* (1978), p. 339; or, have created the image in the public mindset that there is a "mob" in Detroit, dominated by members of the Giacalone, Corrado, Tocco, and Zerilli families. *See, United States v. Tocco,* 200 F.3rd 401, 410, n. 1 (6th Cir. 2000), *rehearing and rehearing en banc denied,* 209 F.3rd 935 (6th Cir. 2000). By joining these Defendants together, the relatively minor vice of allegedly operating a handbook into a major trial of "organized crime figures" or "Mafia chieftains."

As Justice Robert Jackson wrote famously in *United States v. Krulewitch,* 336 U.S. 440, 454; 69 S. Ct. 716; 93 L. Ed. 790 (1949) (Jackson, J., *concurring*): "It is

---

[1] It is important to emphasize that the Defendant, Jack V. Giacalone, has never been implicated in the Hoffa case, as contrasted with his cousin, Joseph

5

difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather flock together."

And, the Government has been known to exploit this kind of prejudice at trial; *see, e.g.*: *United States v. Aloi,* 511 F. 2nd 585, 600 (2nd Cir. 1975)(*held,* use of monikers, underworld jargon, and references to Jimmy Hoffa and the IBT constituted a "prosecution practice [which] is to be condemned," but no reversible error occurred), *cert. denied,* 423 U.S. 1015; 96 S. Ct. 447; 46 L. Ed. 2nd 386 (1975); *United States v. Tocco, supra,* 200 F.3rd at 421-422 ("episodes" were "improper" but did not merit a new trial); *cf. Martin v. Merola,* 532 F. 2nd 191 (2nd Cir. 1976) (§1983 alleging that the Bronx County District Attorney and others intentionally undertook to deprive the plaintiffs of a fair trial, in a pending criminal case, by generating lurid press releases).

In the case at bar, reading the indictment, as a whole, the Defendant Giacalone is alleged to have played a relatively minor role. It is not alleged that he acted in a managerial or supervisory capacity in the alleged operation of the supposed criminal enterprise. The indictment pleads only two (2) overt acts by this Defendant in furtherance of the alleged conspiracy. This scenario renders him particularly vulnerable to innate publicly held prejudices because of his Italian ancestry or origin, his specific family relationships, a blizzard of publicity surrounding not only Jimmy Hoffa, but the Toccos and Corrados as well, and, the danger of spill over evidence by conflating this Defendant's peripheral role with actors who may have played a more major role, if the allegations are proven.

### B. THE DANGER OF "SPILL OVER EVIDENCE"

In the leading case from the U.S. Circuit Court of Appeals for the D.C. Circuit in

*Daly v. United States,* 119 U.S. App. D.C. 353; 342 F. 2nd 932, 934 (1964), *cert. denied,* 382 U.S. 853; 86 S. Ct. 102; 15 L. Ed. 2nd 91 (1965): "trials involving large numbers of separate offenses are not favorites of the law." In the case at bar, it is not necessarily the length of the indictment, but the agglomeration of allegations that threatens to arouse irrational hostility from members of the jury, and spill over or carry over so that the guilt of this Defendant will be inferred from evidence introduced against the other Defendants. The entire body of evidence introduced against *all* of the Defendants would challenge the most intelligent jury to segregate the evidence and judge the accusations against the Defendant, separately and independently from the others. *Cf. United States v. Foutz,* 540 F.2nd 733 (4th Cir. 1976) (discussing the prejudicial effects of spill over evidence).

In fact, the combination of the "guilt by association," evidence which is highly inflammatory by its nature, the "spill over evidence," the difficulty presented by compartmentalizing or segregating the evidence so that the Defendant receives an individualized judgment by the jury, *Kotteakos v. United States,* 328 U.S, 750, 773; 66 S. Ct. 1239; 90 L. Ed. 1557 (1946), are such that, measured, by the totality of the circumstances, severance is fully warranted as a proper exercise of discretion.

### III. THE BETTER EXERCISE OF DISCRETION SUCH AS THE CASE AT BAR IS TO GRANT SEPARATE TRIALS

The better exercise of discretion, as Judge Gordon recognized in *United States v. DeCesaro,* 54 F.R.D. 596, 598-599 (E.D. Wisc. 1972), and *United States v. Balistrieri,* 346 F. Supp. 336, 338-339 (E.D. Wisc. 1972), such as the case *sub judice*, in which: (a) the Government alleges the existence of a gambling conspiracy; (b) with multiple actors and multiple allegations of different overt acts; (c) tinged with underworld notoriety; and (d) some figures who are peripheral to the main body of evidence in the case; *is to grant*

*separate trials in order to insure a fair trial and accord fundamental fairness to each of the Defendants.*

This Court should also re-visit the issue of whether the policies embodied in *United States v. Casamento,* 887 F.2nd 1141, 1152 (2nd Cir. 1989), prohibiting "mega-trials" is a more fundamentally fair approach than the presumption in the Sixth Circuit favoring joint trials, which has been extant heretofore.

**CONCLUSION AND RELIEF REQUESTED**

The relief sought herein should be granted, *in toto,* and this Court should grant such other and further relief as this Court shall deem just, equitable, and proper in the premises.

**RESPECTFULLY SUBMITTED,**

**RICHARD L. STEINBERG, P.C.**

By: s/Richard L. Steinberg
   Richard L. Steinberg
   1800 Buhl Building
   535 Griswold street
   Detroit, Michigan 48226
   TX: 313.964.5500
   FAX: 313.964.5555
   E-MAIL: Trial.law@worldnet.att.net

**ROCKIND & LISS, P.L.L.C.**

By: s/Neil Rockind
   Neil S. Rockind
   255 Gem Building
   30300 Northwestern Highway
   Farmington Hills, Michigan 48334
   TX: 248.865.9400
   FAX: 248.865.9033
   E-MAIL:

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

-v-                                 C.A. No.: 2:06-CR-20122-AC-VMM

                                       Hon. Avern Cohn

                                       Hon. Virginia M. Morgan, U.S.M.J.

**PETER DOMINIC TOCCO, etc., et al.,**

       **Defendants.**

_____/

**PROOF OF SERVICE**

The undersigned states that on this 12th day of March, 2006, he filed a copy of the Motion To Sever and For Separate Trial of Defendant Jack V. Giacolone, Memorandum of Law In Support of Motion to Sever and For Separate Trial of Defendant Jack V. Giacolone together with this Proof of Service, electronically upon United States District Court, Eastern District of Michigan.

                                                         s/Richard L. Steinberg
                                                          Richard L. Steinberg (P25862)
                                                          Attorneys for Plaintiffs
                                                          1800 Buhl Building
                                                          535 Griswold Street
                                                          Detroit, Michigan 48226
                                                          TX: 313.964.5500
                                                          FAX: 313.964.5555
                                                          E-MAIL: Trial.law@worldnet.att.net